TERRE HAUTE GAS CORPORATION ET AL.

*v.* JOHNSON ET AL.

[No. 27,736. Filed December 30, 1942. Rehearing denied and mandate modified May 11, 1943. Petition to modify judgment and mandate denied June 18, 1943.]

500

502

*Baker, Daniels, Wallace & Seagle* and *Davis, Baltzell & Sparks,* all of Indianapolis, *Rawley & Stewart,* of Brazil, *Cooper, Royse, Gambill & Crawford,* of Terre Haute, *George N. Beamer,* Attorney General, and *Urban C. Stover,* Deputy Attorney General (*Paul Y. Davis* and *William G. Davis,* both of Indianapolis, *Gilbert Gambill* and *Samuel D. Royse,* both of Terre Haute, and *Robert B. Stewart,* of Brazil, of counsel), for appellants.

*Frank Hamilton* and *Beasley, O'Brien, Lewis & Beasley,* all of Terre Haute, for appellees.

SHAKE, J.—The appellant Terre Haute Gas Corporation is a manufacturer of artificial gas and the appellant Indiana Gas Utilities Company is a public utility engaged in selling and distributing gas in the City of Terre Haute and in surrounding communities. The utilities company gave the gas corporation an option to purchase its physical assets, franchises, and permits on or before December 31, 1940. On November 20, 1940, the corporations filed separate petitions with the Public Service Commission of Indiana for the approval of said proposed purchase and sale. The commission held a hearing on said petitions and on December 31, 1940, two of its three members entered purported orders approving said transaction and establishing a schedule of rates to be applicable to said gas corporation upon the consummation of said sale. The appellee Lenore H. Johnson, thereupon, brought a suit in the Vigo Circuit Court to set aside the purported orders of the Public Service Commission and to enjoin the utilities company from selling and the gas corporation from purchasing

said property. Subsequently, the trial court permitted the appellee Charles J. Kolsem to intervene as a party plaintiff. The action was venued to the Clay Circuit Court, where there was a trial and a finding to the effect that the orders of the Public Service Commission were void and that the gas corporation and the utilities company should be permanently enjoined from acting thereunder. Motions for a new trial were filed by the appellant corporations and by the Public Service Commission. Upon the denial of a new trial the appellants filed motions in arrest and to modify the judgment, which were likewise overruled. This appeal followed.

The propositions duly presented and relied upon by the appellants are: (1) That neither of the appellees had any such interest in the subject-matter as entitled him to maintain the action; (2) that it was error to permit John H. Beasley to appear in the court below as counsel for the appellees; (3) that it was error to admit in evidence a transcript of the testimony given at the hearing before the Public Service Commission and to permit a member of the commission to relate a conversation he had with the mayor of Terre Haute and to relate a telephone conversation which he overheard between another member and a New York attorney; (4) that there was no evidence that the orders of the Public Service Commission were unreasonable, unlawful, or the result of fraud; and (5) that it was error to refuse to modify the judgment so that it would merely set aside the orders of the Public Service Commission and remand the case to that body. The appellants' propositions will be considered in the order stated.

By way of separate demurrers to the amended complaint of the appellee Johnson and to the intervening

complaint of the appellee Kolsem the appellants █ █ challenged the sufficiency of these pleadings to show that said appellees had any such interest in the subject of the litigation as authorized them to maintain their actions. A motion for a judgment on the pleadings raised the same issue, and the sufficiency of the evidence to establish the fact of a proper interest in the appellees was presented by motions for a new trial. The appellees rely on Acts 1929, ch. 169, § 1 and § 2, § 54-429, Burns' 1933, § 13982, Baldwin's 1934, and § 54-430, Burns' 1933, § 13983, Baldwin's 1934. These provisions authorize actions to vacate, set aside, or enjoin orders of the Public Service Commission on the ground that they are unreasonable or unlawful or were procured by fraud. Such an action must be commenced within 60 days after entry of the order complained of and must be prosecuted by a person adversely affected thereby. Without undertaking an academic definition, it seems sufficient to say that the phrase "adversely affected" conveys the same meaning as the common-law rule which would be applicable in the absence of the statute. Generally, to enable a private individual to invoke the judicial power to determine the validity of an administrative order, he must show that he has sustained or is in immediate danger of sustaining a direct injury as a result of the order, and it is not sufficient that he has merely a general interest common to all members of the public. *Ex parte Levitt* (1937), 302 U. S. 633, 58 S. Ct. 1, 82 L. Ed. 493; *The People's Gas Company et al.* v. *Tyner* (1892), 131 Ind. 277, 31 N. E. 59, 16 L. R. A. 443, 31 Am. St. Rep. 433; 39 Am. Jur., Parties, § 11. This rule supplies the standard by which the sufficiency of the complaints and of the evidence to disclose a right to maintain the action must be determined.

The amended complaint of the appellee Johnson alleged that she was the owner of an undivided interest in certain real estate on which was situated a dwelling house which was supplied with gas for cooking and heating by the appellant utilities company; that she resided with her husband in another dwelling house which was likewise served by said appellant; and that she was a user and consumer of gas furnished and distributed by said utilities company, by reason of which she was adversely affected by the purported orders of the Public Service Commission. The evidence relating to this issue disclosed that the real estate first referred to was occupied by a tenant who used gas for cooking and that the gas supplied to the house where the said appellee lived was paid for by her with money furnished by her husband. It was alleged in the intervening complaint of the appellee Kolsem that he occupied and maintained a residence in Terre Haute which was heated with gas supplied by the utilities company. His testimony supported the allegation.

Public utilities enjoy monopolies and they are privileged to exact rates established by agencies set up by law. Consumers of the products of such utilities have the undoubted right to assert that they are adversely affected by rates so promulgated. The fact that the orders of the Public Service Commission embraced service rates was a sufficient basis for the appellees' right to a judicial review. It is no answer to say that the order relating to rates may not be reviewed because it required a reduction. The appellees may have believed that the reduced rates were exhorbitant. As a matter of pleading and of proof the appellees showed such an interest in the subject-matter as authorized them to institute their actions.

The appellant utilities company filed an unverified

motion to prohibit John H. Beasley from appearing as an attorney for the appellees in the court below. The motion charged that Mr. Beasley had represented said appellant generally, both prior and subsequent to the hearing before the Public Service Commission on the application for authority to sell the utility's property, and that said attorney had obtained copies of certain franchises and permits for the use of said appellant at said hearing. To this charge Mr. Beasley filed a long answer under oath in which he detailed his prior associations and connections with said appellant and he asserted that his relationship as attorney for the utilities company had completely terminated long before the present controversy had its inception. He specifically denied that he had ever been employed by either of the appellants in connection with the subject-matter of this litigation. The proper standard of conduct under the circumtances is well stated in the Sixth Canon of Professional Ethics of the American Bar Association as follows:

> "The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

We must assume, however, that the ruling of the trial court was correct on the issue formed on the unverified charge against the attorney and his sworn answer denying the same.

> "Good practice in all cases requires that where a motion is founded upon matters not within the judicial knowledge of the court, there should be an affidavit as to the existence of the facts upon which it is based, showing their materiality and the neces-

sity for invoking the aid of the court with reference thereto." *McDonel* v. *The State* (1883), 90 Ind. 320, 322.

Relying solely upon *Levi* v. *State* (1914), 182 Ind. 188, 104 N. E. 765, 105 N. E. 898, Ann. Cas. 1917A, 654, the appellants say that it was error to admit in evidence a transcript of the testimony received by the Public Service Commission at a hearing on applications for a reduction of the rates charged by the utilities company. The Levi case was a criminal prosecution in which the State offered the testimony of an absent witness given at a former trial of the cause. The evidence was admitted without a showing that the witness was unavailable and this was held to be error. We find nothing helpful in that case so far as the question here presented is concerned.

It appears from the record that within a month prior to the filing of the petitions with the Public Service Commission for an authorization of the sale of the property of the utilities company to the gas corporation, which resulted in the order here complained of, said commission had conducted a hearing on a number of previous petitions for a reduction of the rates charged by the utilities company. The transcript received in evidence over the appellants' objections was a record of the testimony heard by the commission on said previous petitions. That part of the order of the commission entered on December 31, 1940, relating to rates may be regarded as a determination of these petitions. So considered, we are called upon to determine whether it was proper to receive in evidence a transcript of the testimony heard by the commission at the rate hearing.

In *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 118, 26 N. E. (2d) 399, 409, this court had occasion to say:

"In the final analysis, the finding of an administrative agency will not be disturbed when it is subjected to the scrutiny of a judicial review, upon the claim that it is not supported by the evidence, unless it is made to appear that the finding does not rest upon a substantial factual foundation. This may be determined from a re-examination of the evidence upon which the administrative agency acted, or by the original reviewing court hearing evidence, depending upon the legislative scheme under which the agency operates."

A statute relating to the Public Service Commission discloses that it is made the duty of that body when an action for review has been instituted to "forthwith cause to be made a complete transcript of all the pleadings, evidence and entries filed, introduced, and made with, before, and by the public service commission in the proceeding complained of in such action, and such transcript shall be received in evidence in such action when offered by any party thereto." Acts 1929, ch. 169, §.5, § 54-433, Burns' 1933, § 13986, Baldwin's 1934. We must conclude that there was no error in admitting the transcript in evidence.

The only complaint made by the appellants regarding the admission of testimony detailing a conversation between a member of the Public Service Commission and the mayor of Terre Haute and of another with a New York attorney is that these did not relate to any matter in issue and constituted hearsay evidence. There is no claim that the appellants' substantial rights were affected by the admission of this testimony. Judgments will not be reversed on account of the admission of incompetent evidence not shown to have been harmful. § 2-1071, Burns' 1933, § 175, Baldwin's 1934. *Romona Oölitic Stone Co.* v. *Weaver* (1912), 49 Ind. App. 368, 97 N.E. 441.

A consideration of the sufficiency of the evidence to

support the finding may be reduced to a very narrow inquiry. It is said in the appellants' brief that "any support for the Court's conclusion that the orders should be set aside must be based entirely upon what we believe to be a wholly erroneous proposition of law, namely, that because Commissioner Stuckey received no notice of the meeting of the Commission at which the orders were approved, the orders are not, in effect, the orders of the Commission." The appellees assert in their brief that "The thing which rendered the purported order void, was that it was not made and entered at any meeting of the (Public Service) Commission of which all the Commissioners had notice and opportunity to attend." These quotations constitute a correct statement of the principal issue in this case, and there is no substantial dispute in the evidence as it relates to this subject. The orders here under attack were signed by two members only. The third member was not present and had no notice of or opportunity to attend any meeting of the commission at which the orders were considered or signed.

The Public Service Commission of Indiana consists of three members. § 54-102, Burns' 1933, § 13907, Baldwin's 1934. "A majority of said commission shall constitute a quorum, but on order of the commission any one [1] member of said commission may conduct a hearing, or investigation and take the evidence therein, and report the same to the commission for its consideration and action." § 54-103, Burns' 1933, § 13908, Baldwin's 1934. The commission has authority to formulate necessary rules as to the performance of its duties (§ 54-103, Burns' 1933, § 13908, Baldwin's 1934), but no showing has been made as to the existence of any pertinent rule. The law does not specifically provide for formal meetings of the members of the

commission for any purpose other than to organize immediately following their appointment. Section 1-201, Burns' 1933, § 5, Baldwin's 1934, provides:

"The construction of all statutes of this state shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute: ...
"Second. Words importing joint authority to three or more persons shall be construed as authority to a majority of such persons, unless otherwise declared in the law giving such authority."

It appears to be a fundamental rule of parliamentary practice governing assemblies that the opportunity to deliberate, and if possible, to convince their fellows is the right of the minority, of which they cannot be deprived by the arbitrary will of the majority. *Comm'th. ex rel. Claghorn et al.* v. *Cullen et al.* (1850), 13 Penn. St. 133, 53 Am. Dec. 450. Thus, it has been held that the powers of a municipal council must be exercised at a meeting which is legally called; that action of all the members of the council separately is not the action of the council; and that an agreement entered into separately by the members of the council outside a meeting is not binding. *City of Tulsa* v. *Melton* (1936), 175 Okla. 581, 54 P. (2d) 159, 37 Am. Jur., Municipal Corporations, § 54. Likewise, a county board may not act without notice to all of its members. *Laconia* v. *Belknap* (1934), 86 N. H. 565, 172 A. 245, 20 C. J. S., Counties, § 87. This principle was fully considered by the Supreme Court of Kansas in the case of *P. & F. R. Rly. Co.* v. *Comm'rs. of Anderson Co.* (1876), 16 Kas. 302, 309, in an able opinion by Justice Brewer, who afterwards graced the bench of the Supreme Court of the United States. We quote from the opinion:

"Nor is this merely an arbitrary rule, but one founded upon the clearest dictates of reason. Wherever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. It may be that all will not concur in the conclusion; but the information and counsel of each may well affect and modify the final judgment of the body. Were the rule otherwise, it might often happen that the very one whose judgment should and would carry the most weight, either by reason of his greater knowledge and experience concerning the special matter, by his riper wisdom and better judgment, or by his greater familiarity with the wishes and necessities of those specially to be affected, or from any other reason, and who was both able and willing to attend, is through lack of notice an absentee. All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment of each and all the members, is endangered by any other rule. Again, any other rule would be fraught with danger to the rights of even a majority, as when legally convened the ordinary rule in the absence of special restriction being that a quorum can act and a majority of the quorum bind the body, it would, but for this rule, often be in the power of an unscrupulous minority to bind both the body and the corporation for which it acts to measures which neither approve of."

In *State ex rel. Lemke* v. *Union Light, H. & P. Co.* (1921), 47 N. D. 402, 410, 411, 182 N. W. 539, 542, the rule stated above was held applicable to the board of railroad commissioners of that state, a body in many respects comparable to our Public Service Commission. After quoting from the opinion of Justice Brewer, the court said:

"When we consider that the board of railroad commissioners consists of members, each of whom is elected at large, supposedly on the basis of his

qualifications for the duties imposed, and that the board is intrusted with an extensive authority, legislative in character, to determine rates at which public service corporations must serve the public and the public pay for such service, the requirement that its determinations shall only be made after opportunity is afforded to every member to bring to bear upon his associates his counsel, opinion, and judgment upon all matters entering into the decision, is most reasonable and salutary. This safeguard operates for the protection of both parties to a controversy, and cannot properly be disregarded in arriving at the validity of action of such general importance and affecting so many persons. If orders issued or decisions rendered by two of a board of three members are allowed to stand where no opportunity to participate in the steps leading up to the decision is afforded to the third member, the latter could be rendered entirely useless, and the public be effectually deprived of the service of one in whose judgment upon such matters it had expressed confidence."

The undisputed evidence in this case discloses that on December 31, 1940, the Honorable Perry McCart, Chairman of the Public Service Commission, was confined to an Indianapolis hospital by illness. On the afternoon of that day he was visited by Commissioner Cook, at which time and place the purported orders were agreed upon. Commissioner Stuckey did not attend this meeting, had no notice thereof, and did not learn of the orders until January 2. There is no showing that the subject of the orders had been previously considered at any meeting of the commission at which Commissioner Stuckey was present or of which he had notice.

The appellants rely heavily upon *Sunshine Bus Lines* v. *R. R. Commission* (1941), (Tex. Civ. App.), 149

S. W. (2d) 228. On the facts, that case is very similar to the one at bar. The. Texas Railroad Commission consists of three members of which two constitute a quorum. The statute under which the commission operates does not provide for stated sessions or notice to the members of proposed meetings. The court there held that an order agreed upon by two members without the knowledge of the third was binding and valid. No notice was taken of the principles heretofore discussed and the Court of Appeals reached the conclusion that the independent action of the majority of the members was sufficient. The decision seems to place undue significance upon the statutory provision relative to a quorum. As we view it, the matter of a quorum is one separate and apart from the principle that all the members of a deliberative body must have a fair opportunity to participate in its action. This does not mean that a single member may by absenting himself prevent action by a quorum. The commission has ample authority to adopt rules and regulations respecting the conduct of its business. It would be a simple matter to promulgate a rule fixing a time and place for regular meetings of the commission. All the members would be required to take notice of such a rule and if one should for any reason fail to attend a meeting so called he would be in no position to object on the ground that the majority had acted without his knowledge or consent.

The appellants' last proposition is that the trial court erred in overruling their motion to modify the judgment. The record discloses that the judgment declared the orders of the commission void and the appellants concede that this was proper if there was no reversible error in the proceedings. The judgment went further, however, and directed the appellant gas corporation to

reconvey to the utilities company all properties attempted to be sold under and by virtue of said void orders and directed generally that the status of said appellants with respect to the property in controversy should be restored as of the time of the commencement of the action. The part of the judgment complained of was, no doubt, the result of the showing made at the trial that the appellants gas corporation and utilities company had consummated the proposed purchase and sale of the property after the commencement of this action. Such being the case, said appellants acted at their peril since they were bound to know that the judgment might relate to the time when the action was begun. In *Holden* v. *City of Alton* (1899), 179 Ill. 318, 325, 53 N. E. 556, 557, 558, the Supreme Court of Illinois had before it the question of the proper relief in an action to enjoin permanently an unlawful contract for public printing where no restraining order or temporary injunction was sought. Mr. Justice Cartwright, speaking for the court, said:

"Counsel for appellees says that the contract has been performed and the money paid, and that the court should disregard the injury done to the taxpayer for the reason that it has been fully accomplished. The record does not show that the fact stated is true, but if it is, the action was taken after the filing of the bill and when the court had acquired jurisdiction to prevent the wrong. No action under such circumstances can affect the power of the court to grant the relief prayed for and to compel restitution. There was no injunction *pendente lite,* and the defendants would not be liable for contempt for violating an order of the court, but if a defendant acts in such a case, it is at the risk of being compelled to restore the condition existing when the court acquired jurisdiction."

Since the orders of the commission are void, the case stands as if none had been entered insofar as that body is concerned. The commission ought to be free to enter any lawful order that it may deem just and proper and its conduct in that regard ought not to be influenced by the steps taken by the appellants after the validity of the orders entered on December 31, 1940, became the subject of an action for judicial review. In other words, the trial court had full power to restore the *status quo* and such we understand to be the effect of the decree.

We have carefully considered all of the evidence in the voluminous record. Much of it relates to the issue of fraud of which there was no proof or finding; to the· relations existing between the members of the Public Service Commission, which is no concern of ours; and to the question as to whether the interests of the people of Terre Haute would be better served by having natural gas rather than artificial gas made available to them, which likewise is not for us to determine.

For the reasons stated, the judgment is affirmed.

NOTE.—Reported in 45 N. E. (2d) 484.

## ON PETITIONS FOR REHEARING AND FOR MODIFICATION OF THE MANDATE.

SHAKE, J.—The Terre Haute Gas Corporation has petitioned for a rehearing and the Indiana Gas Utilities Company for modification of the mandate.

The case of *Sunshine Bus Lines* v. *Railroad Commission* (1941), (Tex. Civ. App.), 149 S. W. (2d) 228, heretofore relied upon by the appellants, has been overruled. *Webster* v. *Texas & Pacific Motor Transport Co.* (1942), 140 Tex. 131, 166 S. W. (2d) 75. With this observation we are content to stand on the original opinion. The petition for a rehearing is denied.

It has been called to our attention that since the principal opinion was filed, the Public Service Commission of Indiana has held a hearing and entered an order or orders approving the sale of the physical assets, franchises and permits of Indiana Gas Utilities Company to the Terre Haute Gas Corporation. Under these circumstances no good purpose would be served by requiring said parties to restore the *status quo ante* as ordered by the judgment of the Clay Circuit Court. The petition of Indiana Gas Utilities Company is sustained and the mandate of this court is hereby modified to read as follows:

The Clay Circuit Court is directed to strike from its final judgment in this cause the part thereof by which the Terre Haute Gas Corporation was ordered and directed to reconvey to the Indiana Gas Utilities Company all the property attempted to be sold and conveyed to said Terre Haute Gas Corporation; also, to strike from said judgment the part thereof requiring said parties to restore the ownership, management and control of said property to the status which existed on the date of the filing of the original complaint. Subject only to the aforesaid modifications, the judgment of the Clay Circuit Court is affirmed.

NOTE.—Reported in 48 N. E. (2d) 455.