Commonwealth of Pennsylvania, Appellant, and Alliance for Consumer Protection—Hill District Branch, and Elizabeth Gunter, Intervening Appellants, *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee.

352

Argued December 4, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Gerry J. Elman,* Deputy Attorney General, with him *Lawrence Silver,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellant.

*Lewis M. Taffer,* for intervening appellants.

*Albert W. Johnson, III,* with him *Daniel F. Joella,* and *Edward Munce,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 7, 1975:

We have before us two issues for determination in this administrative agency appeal: 1) Did the Pennsylvania Public Utility Commission, Appellee herein, (PUC) deny due process of law to the Commonwealth of Pennsylvania, Appellant, (Commonwealth) and the Alliance for Consumer Protection, Intervening Appellant, (ACP) by not making available to the Commonwealth and ACP technical staff reports of PUC? and; 2) Did PUC err in amortizing expenses incurred due to tropical storm Agnes over a ten year period in determining revenue requirements for rate making purposes?

The complex factual situation which sets the stage for this appeal can be summarized as follows. On December

7, 1972, the Bell Telephone Company of Pennsylvania, Intervening Appellee, (Bell), filed revisions to tariffs to become effective February 7, 1973, proposing increases and changes in existing local service rates, connection, service and equipment charges. By order dated February 6, 1973, the PUC suspended the operation of these tariff revisions and commenced an investigation into the reasonableness and lawfulness of the proposed changes. The Commonwealth, on February 6, 1973, filed a complaint with PUC alleging, *inter alia*, that these changes "[were] unjust, unreasonable and in violation of the law . . . in violation of Article III, Section 301 et seq. of the Public Utility Law." Twenty-three days of hearings were held during the period May 2, 1973-August 10, 1973 at Harrisburg, Philadelphia and Pittsburgh at which witnesses appeared for Bell, Commonwealth and other complainants.

Of critical importance to this appeal is the objection made by counsel for Commonwealth to PUC's position that counsel for the Complainants and Respondent would not be permitted to review staff reports before they were submitted to the Commissioners for possible suggestions, objections or comments. Objections by Commonwealth and a petition by ACP deploring this procedure were overruled. By order dated December 12, 1973, PUC rendered a final determination on the merits. Petitions for reconsideration and reopening by Commonwealth and ACP were denied, hence this appeal.

The first of Appellants' two positions is that the conduct of the agency constituted a denial of due process when PUC refused to allow interested parties access to the Commission's technical staff reports which were used to determine the appropriateness of the tariff changes. These reports, in fact, analyze and recommend positions developed or incorporated in the record. Relying on *Morgan v. United States*, 304 U.S. 1 (1938), *(Morgan II)*, the Commonwealth and ACP ably argue that the Com-

mission's decision-making processes, including staff reports, are subject to public disclosure. They urge us to overrule *Smith v. Pennsylvania Public Utility Commission,* 192 Pa. Superior Ct. 424, 162 A.2d 80 (1960) but we hold that both *Smith* and *Morgan v. United States,* 313 U.S. 409 (1941) *(Morgan IV),* are controlling. In *Smith,* President Judge RHODES distinguished *Morgan II* when he wrote: "In our opinion the second Morgan case does not hold that the deciding agency may not utilize its staff facilities to sift and analyze the evidence. It was the decision of the Supreme Court that the hearing was fatally defective because Morgan, against whom a general complaint was issued, was not apprised of the specific charges or claims against him. Morgan v. United States, supra, 304 U.S. 1, 18, 22, 58, S. Ct. 773, 82, L. Ed. 1129, 1132, 1134. As we have indicated, the proceeding in the instant case did not involve any complaints against appellant, and no specific charges against him were raised by the commission and decided in its final order. *The requirement that anyone involved in a proceeding be apprised of the claims against him includes notice of specific charges or complaints, but does not include notice of the considerations involved in the decisional process of the administrative agency. The second Morgan case specifically held that it would be improper to probe the mental processes of the agency in reaching its conclusions. This portion of the case was reaffirmed in the fourth Morgan case.* United States v. Morgan, 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429, 1435." (Emphasis added.)

*Smith, supra,* 192 Pa. Superior Ct. at 433, 162 A.2d at 85. Justice FRANKFURTER in *Morgan IV* wrote: "Over the Government's objection, the district court authorized the market agencies to take the deposition of the Secretary. The Secretary thereupon appeared in person at the trial. He was questioned at length regarding the process by which he reached the conclusions of his order, including

the manner and extent of his study of the record and his consultation with subordinates. His testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. Much was made of his disregard of a memorandum from one of his officials who, on reading the proposed order, urged considerations favorable to the market agencies. *But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary 'has a quality resembling that of a judicial proceeding.' Morgan v. United States, 298 U.S. 468, 480. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that 'it was not the function of the court to probe the mental processes of the Secretary.' 304 U.S. 1, 18. Just as a judge cannot be subjected to such a scrutiny, compare Fayerweather v. Ritch, 195 U.S. 276, 306-07, so the integrity of the administrative process must be equally respected.* See Chicago, B. & Q. Ry. Co. v. Babcock, 204 U.S. 585, 593.. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other. United States v. Morgan, 307 U.S. 183, 191." (Emphasis added.) *Morgan IV, supra,* 313 U.S. at 421-22. The Federal judiciary has consistently followed the mandate of *Morgan IV, see e.g., Braniff Airways v. C.A.B.,* 379 F.2d 453 (D.C. Cir. 1967); *Great Lakes Airlines v. C.A.B.,* 291 F.2d 354 (9th Cir. 1961); *T.S.C. Motor Freight Lines, Inc. v. United States,* 186 F.Supp. 777 (S.D. Tex. 1960), by holding that on appeal the administrative decisional process should not be questioned. In no way can we ignore the clear and precise instruction written in these

cases. We must recognize and respect the pronouncement that the decisional process of an administrative agency must be free from public or private inquisition either by the investigative or appellate device. This is the law and absent judicially authoritative direction otherwise, we are bound.

Finally, as to their second contention, we must reject Appellant's argument that P.U.C. abused its discretion when it accepted and ordered flood damage amortization over a ten year period.

Our scope of review of Orders of the P.U.C. was aptly delineated in *Lower Paxton Township v. Pennsylvania Public Utility Commission,* 13 Pa. Commonwealth Ct. 135, 139, 317 A.2d 917, 920 (1974) when Judge KRAMER wrote: "We may not indulge in the process of weighing evidence and resolving conflicts in testimony . . . the P.U.C.'s discretion must be accepted unless totally without support in the record, based on an error of law, or is otherwise unconstitutional." (Citations omitted).

Our careful and exhaustive review of the record satisfies us that P.U.C. was justified in concluding that the results to be obtained by accepting either the five or twenty-three year amortization periods were less desirable than those flowing from the ten year proposal. This being so, P.U.C.'s discretion in this case may not be disturbed.

Consistent with the foregoing, the order of the P.U.C. is affirmed.