STATE of Missouri ex rel. PHILIPP
TRANSIT LINES, INC., Appellant,

v.

PUBLIC SERVICE COMMISSION of the
State of Missouri et al., Respondents.

No. 59730.

Supreme Court of Missouri,
En Banc.

June 14, 1977.

Respondents' Motion for Rehearing
Denied July 11, 1977.

Warren H. Sapp, Kansas City, for appellant.

Leland B. Curtis, General Counsel, Roger M. Baron, Counsel, Missouri Public Service Commission, Jefferson City, for respondent.

John T. Martin, Kansas City, amicus curiae, for Kansas City Star.

Stanley P. Christopher, III, Kansas City, amicus curiae, for Jackson County.

FINCH, Judge.

This case involves the question of whether the Public Service Commission of Missouri (PSC) may decide a case by a report and order adopted by notational voting[1] or whether the report and order must be acted upon at a public meeting of which notice has been given.

---

1. Under this procedure, frequently employed by the PSC, each commissioner, after consideration of the circulated order, indicates approval or dissent on a notational voting sheet which accompanies the report and order. If a commissioner is not in agreement, he has various options, including requesting a conference or preparing and filing a dissent.

On February 19, 1974, PSC issued an order to show cause why the authority of Philipp Transit Lines, Inc., (Philipp) to provide certain service should not be suspended or revoked and penalties sought because of allegedly illegal hauls. At issue was whether Philipp was authorized to conduct direct motor carrier operations between St. Louis and Kansas City.

Following a formal hearing, a member of the PSC who had conducted the hearing prepared a proposed report and order. That report and order was circulated to other members of the PSC for notation thereon of their approval or disapproval. Four of the commissioners indicated approval of the proposed report and order on the notational voting sheet. The fifth commissioner was marked absent and did not vote. No meeting of the PSC was held to vote on the report and order. Instead, it was considered adopted on the basis of the notational voting. The order was printed and on July 1, 1974, was mailed to all parties of record with an effective date of July 11, 1974.[2]

On petition for review, the circuit court affirmed the order directing Philipp to cease service between St. Louis and Kansas City and the order directing the General Counsel to seek penalties. The order suspending Philipp's intrastate authority for 30 days was reversed.

Both parties appealed to the Missouri Court of Appeals, Kansas City District, which reversed and remanded, directing the circuit court to remand to the PSC which, after reconsideration of the case, was directed to adopt a report and order in a public meeting after notice pursuant to the provisions of the Open Meetings Law, ch. 610, RSMo Supp.1973, commonly referred to as the "Sunshine Law".

Thereafter, on application of PSC, we ordered the case transferred to this court in accordance with Mo. Const. art. V, § 10, and we now decide it as though here on direct appeal. We reverse and remand with directions.

Philipp, in arguing that when voting on the proposed report and order in this case the PSC members were required to assemble in a meeting at which they cast their votes thereon, relies on two statutory provisions. The first of these is § 386.130.[3]

Chapter 386 governs the creation and organization of the PSC. It was enacted originally in 1913. Section 386.130, relied on by Philipp as governing the disposition of this case, covers organization of the PSC, authorizes meetings thereof and defines what is a quorum for the transaction of business. It is unchanged from the form in which it was enacted in 1913. 1913 Mo. Laws, p. 564, § 12.

Philipp argues that § 386.130 makes the commission a collegial body which is required to hold meetings at which it makes the final decisions as a body. That its language so requires, says Philipp, is clear because the section was taken from a New York statute which, at the time it was borrowed, had been construed by the New York courts as requiring that an order disposing of a case be adopted at a meeting of the commission at which a quorum was present.

The New York statute from which the predecessor of § 386.130 is said to have been taken was 1907 N. Y. Laws, ch. 429, § 11. Comparison of the two sections, set out side by side, shows that they are almost identical.

**2.** The PSC order directed Philipp to cease providing service between St. Louis and Kansas City. It also suspended Philipp's intrastate authority for 30 days and ordered the PSC General Counsel to file an action seeking penalties for violations under § 390.051 RSMo 1969. Since we conclude that a meeting of the PSC was necessary and reverse and remand for that reason, we do not detail the evidence relative to the operations between St. Louis and Kansas City and whether they were authorized.

**3.** All statutory references are to RSMo 1969 unless otherwise indicated.

Sec. 386.130 RSMo 1969

"The commission shall promptly and duly organize. A majority of the commissioners shall constitute a quorum for the transaction of any business, for the performance of any duty or for the exercise of any power of the commission, and may hold meetings of the commission at any time or place within the state. Any investigation, inquiry or hearing which the commission has power to undertake or to hold may be undertaken or held by or before any commissioner. All investigations, inquiries, hearings and decisions of a commissioner shall be and be deemed to be the investigations, inquiries, hearings and decisions of the commission, and every order and decision made by a commissioner, when approved and confirmed by the commission and ordered filed in its office, shall be and be deemed to be the order of the commission."

1907 N.Y.Laws, ch. 429, § 11

"A majority of the commissioners shall constitute a quorum for the transaction of any business, for the performance of any duty or for the exercise of any power of the commission, and may hold meetings of the commission at any time or place within the state. Any investigation, inquiry or hearing which either commission has power to undertake or to hold may be undertaken or held by or before any commissioner. All investigations, inquiries, hearings and decisions of a commissioner shall be and be deemed to be the investigations, inquiries, hearings and decisions of the commission and every order made by a commissioner, when approved and confirmed by the commission and ordered filed in its office, shall be and be deemed to be the order of the commission."

There are only two differences in the two sections. Missouri added the sentence at the beginning which provides that the commission shall organize promptly. That did not alter the meaning of the portion borrowed from the New York statute. The other difference is in the third sentence of § 386.130 wherein the word "the" precedes the word "commission" whereas in the corresponding sentence in § 11 of the New York statute the word "commission" is preceded by the word "either". This difference is accounted for by the fact that in New York there was a commission for each of two districts whereas in Missouri there is a commission for the entire state. See 1907 N. Y. Laws, ch. 429, §§ 3 and 4.

The identity of the two statutes supports the contention of Philipp that § 386.130 was borrowed from the New York statute. PSC does not contend otherwise in its brief. That this frequently occurred was recognized by this court in *Burnside v. Wand*, 170 Mo. 531, 71 S.W. 337 (banc 1902). The court considered in that case the source of a Missouri statute pertaining to actions on bonds for the breach of any condition other than the payment of money. In concluding that the Missouri statute was borrowed from New York, the court said, 71 S.W. at 350:

"* * * But there are such differences apparent between our statute and the

English statutes as to arrest, at once, the attention, and to force the inquiry whether our statute is made up of the statute of Anne and William, with such changes as suggested themselves to the minds of our legislators, or whether our statute is borrowed from the statutes of some other state. Induced by this thought, the mind is at once prompted to look to the statutes of the state of New York, principally because so large a part of our statute laws have been borrowed from that state. The result of such an inquiry is that the laws of New York are found to be almost identical with our statutes. The phraseology of both statutes compels the conviction that our statute, passed for the first time in 1835 (Rev.St.1835, p. 430), was borrowed from the New York statutes of 1829. * * *"

We conclude and hold that what is now § 386.130 was borrowed from 1907 N. Y. Laws, ch. 429, § 11. That occurred in 1913. At that time, § 11 of the N. Y. law had been construed in *People v. Whitridge*, 144 App.Div. 486, 129 N.Y.S. 295, 298 (1911), aff'd, 204 N.Y. 646, 97 N.E. 1112 (1912), as follows:

"* * * The statute provides that:

'A majority of the commissioners shall constitute a quorum for the trans-

action of any business, for the performance of any duty, or for the exercise of any power of the commission, and may hold meetings at any time or place within the state.' Section 11.

"The body is not composed of five individuals authorized to act independently, for the act provides that 'there shall be a Public Service Commission for each district.' Section 4.

"And, while individual commissioners may hold 'investigations, inquiries and hearings' (section 11), the final act must be that of the commission as a body at a meeting attended by a quorum, and it is only for the violation of an order of the commission as such a body that a penalty can be imposed. In order that there should have been a valid order, it was necessary that it should appear that it had been adopted by the commission, acting at least by a majority, and at a stated meeting, or a meeting properly called and of which all the commissioners had been notified and had had an opportunity to be present. 10 Cyc. p. 323. No attempt was made to supply this proof. Although the commission is a most important and powerful one, it appeared that no minutes are kept of its proceedings; at least, none were produced, although an opportunity was given plaintiffs to produce them, if they existed. Thus, as the case was finally presented, there was absolutely no legal evidence, or any evidence at all, that the commission had ever adopted the order which defendant is charged with having violated."

■ One of the well established rules of statutory construction is that when a state borrows a statute from another state and enacts it into law, the borrowing state also adopts the interpretation placed thereon prior to the time of enactment in the borrowing state by the courts of the state from which the statute was taken. This rule was stated in *Burnside*, 170 Mo. 531, 71 S.W. at 350, thus:

"* * * It is a rule of law that when a statute is borrowed from another state the decisions of the state from which the statute is borrowed, interpreting such statute, are borrowed also. For it is presumed that the legislature adopting the statute of a sister state knew of the interpretation placed upon the statute by the courts of such sister state, and intended that a like interpretation should be put upon the statute after it became a part of the laws of the adopting state. When we adopt the New York statutes we therefore adopted the interpreting decisions of that state also."

This doctrine was reaffirmed in *State v. Anderson,* 515 S.W.2d 534, 539 (Mo.banc 1974):

"* * * The rule is well established that when the legislature enacts into law a statute which they take from the laws of another state, they adopt the interpretation placed thereon by the courts of that state prior to the time the statute is enacted by Missouri. This rule was expressed in *General Box Co. v. Missouri Utilities Co.,* 331 Mo. 845, 55 S.W.2d 442, 447 (1932) as follows:

'It should be noted that this construction of the Nebraska statute was placed thereon by the highest court of that state prior to its adoption here, and the law is well settled that, when one state adopts a statute of another state which the courts of that state have construed, then such construction will be held to have been adopted along with the statute. *Schott v. Continental Auto Ins. Underwriters,* 326 Mo. 92, 31 S.W.2d 7, 11; *State ex rel. Westhues v. Sullivan,* 283 Mo. 546, 578, 224 S.W. 327; *Yost v. Railroad,* 245 Mo. 219, 238, 149 S.W. 577.' "

■ Under the rule articulated in *Burnside* and *Anderson* and the cases cited therein, Missouri, in borrowing § 11 from New York, enacted it with the meaning ascribed thereto in *Whitridge.* That meant that our statute, presently § 386.130, provides that "while individual commissioners may hold 'investigations, inquiries and hearings' * * *, the final act must be that of the commission as a body at a meeting

attended by a quorum * * *. In order that there should have been a valid order, it was necessary that it should appear that it had been adopted by the commission, acting at least by a majority, and at a stated meeting, or a meeting properly called and of which all the commissioners had been notified and had an opportunity to be present."

■ The PSC concedes that there was no such meeting. Instead, the report and order was adopted pursuant to the notational voting procedure previously described. Hence, the procedure followed did not conform to the requirements of § 386.130.[4] As a result, the order is voidable and is subject to attack in this proceeding for review and the appeal from the action of the circuit court thereon, unless, for one of the reasons advanced by PSC, a contrary result is indicated.

In the first place, PSC contends that § 386.130 simply does not say that the members must assemble in a group to adopt orders or that notational voting is prohibited. In other words, says PSC, "If this statute requires a meeting, it is not obvious on the face of it." This argument ignores completely the fact that when Missouri enacted what is now § 386.130, it adopted a statute which, having been so construed in New York, meant in Missouri that a meeting is required to vote on and adopt an order such as the one involved in the case. Interpreting § 386.130, we do not look solely at the language of the statute. Rather, as stated in *Burnside* and *Anderson,* we must read it as the statute from which it was

taken was interpreted in *Whitridge.* We overrule this contention.

■ Another argument advanced is that § 386.130, when read *in pari materia* with § 386.040, does not prohibit notational voting. Although no reference is made by PSC to *Whitridge,* this argument apparently presupposes that somehow § 386.040 would nullify the effect of *Whitridge.* We find no merit in this contention. Sec. 386.-040 simply provides for establishment of the commission, and, after reciting that it shall have the powers and duties specified in the chapter, states that it shall have "all powers necessary or proper to enable it to carry out fully and effectually all the purposes of the chapter". We find nothing in that language which indicates that the legislature intended thereby to amend or change § 386.130 or to eliminate the requirement of § 386.130, as interpreted in *Whitridge,* that orders be adopted at a meeting of the commission. Nor are we persuaded to a contrary result by *Braniff Airways, Inc. v. C.A.B.,* 126 U.S.App.D.C. 399, 379 F.2d 453 (1967) or *T.S.C. Motor Freight Lines, Inc. v. United States,* 186 F.Supp. 777 (S.D.Tex. 1960), aff'd per curiam sub nom. *Herrin Transp. Co. v. United States,* 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961), both cited by Philipp. These cases, each interpreting a federal statute, held that such statutes did not specifically require that members of the administrative body meet in a formal meeting to take administrative action. Both approved notational voting. In so holding, *T.S.C. Motor Freight Lines, Inc.* placed some reliance on a provision in the I.C.C. Act somewhat comparable to the language in § 386.040. However, in neither of those cases was the court interpreting

---

4. Our construction of § 386.130 is in accord with the rule stated in 2 Am.Jur.2d Administrative Law § 227 (1962):

"The powers and duties of boards and commissions may not be exercised by the individual members separately. Their acts, and, specifically, acts involving discretion and judgment, particularly acts in a judicial or quasi-judicial capacity, are official only when done by the members formally convened in session, upon a concurrence of at least a majority, and with the presence of a quorum or the number designated by statute."

See also 73 C.J.S. Public Utilities § 58 (1951).

It is of interest, but not determinative, that Missouri courts have established a similar requirement that various boards and commissions meet and act as a collegial body or body corporate rather than by a composite of individual actions by members of the board or commission, even if all concur in doing the particular thing. *State ex inf. Mooney ex rel. Stewart v. Consolidated School Dist. No. 3,* 281 S.W.2d 511 (Mo.App.1955); *State ex rel. Bank of Belton v. Wray,* 55 Mo.App. 646 (1893).

statutory language which, by authoritative judicial decision, had been construed previously to mean that a meeting of the commission was required when orders were adopted. Neither case provides authority for overruling or ignoring the rule of statutory construction established by *Burnside* and *Anderson* whereby we adopted § 386.-130 as it had been construed by the New York courts at the time we borrowed the statute.

Next, PSC argues that if § 386.130 is ambiguous as to whether or not notational voting is permissible, we should give great weight to the long standing interpretation of the statute by the PSC that permits notational voting. It argues that use of such voting has been open and of long standing and the statute should be interpreted accordingly.

▮ It is true that administrative interpretation is utilized as a tool for determining legislative intent when construing an ambiguous statute. However, such tool may not be utilized in a situation wherein prior to such administrative interpretation the statute had been judicially interpreted. Administrative interpretation would not be permitted to alter or overturn a prior judicial construction of the statute.

▮ Here we deal with a statute which, when borrowed in 1913, had been judicially interpreted in New York. That judicial interpretation was adopted when we enacted that statute. This being true, the commission could not circumvent that judicially established meaning by a subsequent administrative interpretation.

Finally, PSC argues that by the procedure followed in adopting the report and order in this case, there was substantial compliance with chapter 386 and that when § 386.130 is read *in pari materia* with

§ 386.610,[5] such substantial compliance was sufficient. We should not reverse for mere technical error, argues PSC, nor should we permit the decision-making process of PSC to be subject to inquisition on appeal, absent a showing of substantial prejudice. Cases cited to support this contention are *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), *Commonwealth v. Commonwealth, Public Utility Commission,* 17 Pa.Cmwlth. 351, 331 A.2d 598 (1975), and *Braniff Airways, Inc. v. C.A.B., supra.*

▮ We find no basis in this argument for sustaining the system of notational voting in lieu of meetings of the commission at which cases are decided and orders adopted. *Morgan* involved the propriety of actions taken by the Secretary of Agriculture in setting maximum rates to be charged by market agencies for their services at the Kansas City stockyards and the subsequent impounding of excess funds. The trial court held the Secretary's order invalid and in the process authorized the taking of a deposition from the Secretary. The Supreme Court reversed, saying 313 U.S. at 422, 61 S.Ct. at 1004:

> "The proceeding before the Secretary [of Agriculture] 'has a quality resembling that of a judicial proceeding:' . . . Such an examination of a judge would be destructive of judicial responsibility. . . . Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected. . . ."

*Morgan* laid the foundation for the rule, followed in the other cases cited by PSC, that the administrative decisional process cannot be probed and questioned on appeal. But see *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

5. Sec. 386.610 provides as follows:

"A substantial compliance with the requirements of this chapter shall be sufficient to give effect to all the rules, orders, acts and regulation of the commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto. The provisions of this chapter shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice between patrons and public utilities."

None of these cases, all of which deal with the right to probe the internal procedures involved in the administrative decisional process, are pertinent to the issue we resolve. That question is simply this: Does § 386.130 require a meeting of the commission at which this case is to be decided or does the statute permit the notational voting which was employed, thereby utilizing separate individual actions by commissioners which are then "tacked" or consolidated to produce a decision. When we decide that question, we are not conducting or sanctioning an inquisition into the decision-making process of the PSC. Nor are we examining for mere technical error.

As previously noted, Philipp also cites a second statute which it says requires the PSC to decide this case and enter the necessary order at a meeting of the commission rather than by notational voting. That statute is ch. 610 RSMo Supp.1973, and particularly § 610.015 thereof. Having concluded that § 386.130 so requires, we see no useful purpose in extending this opinion to decide whether § 610.015 provides an additional mandate for that method of acting on reports and orders such as here involved. We do note that the PSC acknowledges in its brief that the Open Meetings Law does apply to it, saying, "The Commission fully concedes that it is a 'public governmental body' and thus subject to the Sunshine Law (610.010[2]) * * *." We agree with that conclusion. *Cohen v. Poelker,* 520 S.W.2d 50 (Mo.banc 1975).

The judgment is reversed and the case is remanded to the Circuit Court of Cole County with directions to further remand it to the Public Service Commission for handling in accordance with the views herein expressed.

SEILER, C. J., and HENLEY, J., concur.

DONNELLY, J., concurs in separate concurring opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

MORGAN and RENDLEN, JJ., dissent and concur in separate dissenting opinion of BARDGETT, J.

DONNELLY, Judge, concurring.

1 concur in the principal opinion and agree that the Public Service Commission of Missouri is, in a general sense, subject to the Sunshine Law. However, I wish to expressly reserve the right to decide, when it is presented, the question whether the Sunshine Law applies in situations where the Commission is exercising a quasi-judicial function and constitutional rights of privacy and due process are involved. See dissenting opinion of Dekle, Justice, in *Canney v. Board of Public Instruction of Alachua County, Florida,* 278 So.2d 260, 264 (Fla.1973).

BARDGETT, Judge, dissenting.

I respectfully dissent. The New York case of *People v. Whitridge,* 144 App.Div. 486, 129 N.Y.S. 295 (1911), was affirmed without opinion in 1912, 204 N.Y. 646, 97 N.E. 1112. The Missouri statute was adopted by the general assembly in March 1913. According to the briefs in this case the Missouri Public Service Commission has always utilized a system of "notational voting". Notational voting is simply a method used to record the votes of the commission members after the matter has been fully heard, probably discussed between some or all of the commissioners, and a proposed opinion (report and order) has been prepared and circulated to all of the commissioners. The commissioner "notes" his vote while in his office rather than physically meeting with the other commissioners in order to vote or cast his vote in their presence. The principal opinion holds that the commissioners cannot utilize notational voting to adopt a decision. As I understand it, that is the limited scope of the court's holding in this case.

Nevertheless, even though the opinion be narrow in scope, I dissent. Although I agree with the statement of the general rule of statutory construction set forth in the principal opinion and supported by *Burnside v. Wand,* 170 Mo. 531, 71 S.W. 337 (banc 1902), and *State v. Anderson,* 515

S.W.2d 534, 539 (Mo.banc 1974), I do not accept such a rule of construction as absolutely binding on this court. I have great difficulty believing that the members of the general assembly of Missouri in March 1913 were cognizant of the *Whitridge* case decided in New York in 1912. I say this partly because it appears to be accepted by all parties that the Missouri Public Service Commission used "notational voting" from the beginning. I think that sixty-odd years of such practice, without complaints, should be given more weight than the principal opinion affords. If this interpretation and practice were clearly contrary to the statute then, of course, it should be given no weight at all. But the statute does not clearly prohibit the adoption of decisions by this method and, therefore, I think the procedural practice of the commission should be given great weight in deciding this narrow issue.

In my opinion no prejudice whatever accrued to Philipp Transit Lines by reason of the commission members noting their votes rather than meeting together simply to cast their votes in each other's presence. Each member was required to read the evidence if he did not attend the particular hearing, section 536.080, RSMo 1969, *State ex rel. Jackson County v. Public Service Commission*, 532 S.W.2d 20 (Mo.banc 1975), and there is no contention that any irregularity occurred in that regard. Although Philipp Transit argues that the commission's procedure makes it possible to bypass two of the five commissioners by not circulating the draft order to them, the practicalities of the situation dictate that it could not be done without the bypassed commissioners knowing about it. This is so because the participation or nonparticipation and vote of each member is recorded and made public.

None of the cases cited by appellant Philipp Transit deal with notational voting in a pure sense. They are premised on a fundamental defect common to each case which was that notice and opportunity to vote was actually and prejudicially denied to at least one member or commissioner in each case.

Those cases are *Alabama Public Service Commission v. Redwing Carriers, Inc.*, 281 Ala. 111, 199 So.2d 653 (1967), *Webster v. Texas & Pacific Motor Transport Co.*, 140 Tex. 131, 166 S.W.2d 75 (1942), *Carroll v. Alabama Public Service Commission*, 281 Ala. 559, 206 So.2d 364 (1968), *Houston & North Texas Motor Freight Lines, Inc. v. Johnson*, 140 Tex. 166, 166 S.W.2d 78 (1942), *Terre Haute Gas Corp. v. Johnson*, 221 Ind. 499, 45 N.E.2d 484, 48 N.E.2d 455 (1942), and *Paola & F. R. Ry. Co. v. Commissioners of Anderson County*, 16 Kan. 302 (1876).

In the instant case each commissioner was notified of the proposed opinion and order and was afforded the opportunity of voting. Four voted and one was absent, but as to the one absent no one contends, nor was it shown, that it constituted any irregularity.

In *Braniff Airways, Inc. v. C.A.B.*, 126 U.S.App.D.C. 399, 379 F.2d 453 (1967), the court upheld the "notation" procedures utilized by the Civil Aeronautics Board. The C.A.B. was working under similar statutory language as the Missouri Public Service Commission. The court in *Braniff* concluded that the required forum need not be physically present at any one time and that the board was allowed "to proceed with its members acting separately, in their various offices, rather than jointly in conference." 379 F.2d at 460. The court reasoned that the workload involved made this procedure quite reasonable and even drew an analogy between that notational voting system and the procedure used by the court itself. *T.S.C. Motor Freight Lines, Inc. v. United States*, 186 F.Supp. 777 (S.D.Texas, 1960), aff'd *per curiam sub nom. Herrin Transp. Co. v. United States*, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961).

The Missouri Public Service Commission issued 7,545 orders during the fiscal year July 1, 1971, through June 30, 1972, Annual Report of Missouri Public Service Commission 1971–72, p. 9; 7,027 orders in fiscal 1972–73, and 7,950 orders in fiscal 1973–74, Missouri Public Service Commission Annual Report 1973–74, p. 6.

In my opinion the procedure called "notational voting" is not prohibited by sec. 386.-130, RSMo 1969, and is fully justified by the workload of the commission. I would hold that sec. 386.130 does not require a formal meeting to cast votes and does not prohibit notational voting.

The other issue is whether a meeting is required by secs. 610.010–610.115 (Sunshine Law). The principal opinion did not need to reach that issue because of its determination that sec. 386.130 does not permit notational voting. In my opinion the Sunshine Law does not require a meeting for the purpose of voting to adopt a decision.

For the foregoing reasons I dissent.

## ON REHEARING

PER CURIAM.

In its motion for rehearing, the Pubic Service Commission again argues that in order to permit commissoners to attend local hearings over the state and at the same time handle the large volume of orders, it needs the flexibility provided by a system of notational voting. It further urges that if there is to be a requirement that members meet to vote upon matters before it, the legislature should impose that obligation. This contention overlooks the fact that we have held that the present statute does so require. If that is to be changed, the request necessarily must be addressed to the general assembly.

Respondents' motion for rehearing is overruled.